IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TASHAE MCDONALD,                    : Civ. No.  1:25-CV-122
                                    :
            Plaintiff,              :
                                    :
    v.                              :
                                    : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,                    :
Commissioner of Social Security,[1] :
                                    :
            Defendant.              :

## MEMORANDUM OPINION

## I.    Introduction

Tashae McDonald filed a Title II application for a period of disability and disability insurance benefits on January 3, 2023. (Tr. 42). Following an initial hearing before an Administrative Law Judge ("ALJ"), the ALJ found that McDonald was not disabled from her alleged onset date of disability of September 1, 2021, through August 8, 2024, the date of the ALJ's decision. (Tr. 42, 51).

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

McDonald now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  After a review of the record, we conclude that the ALJ's decision is not supported by substantial evidence.  Therefore, we will remand this matter for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case

On January 3, 2023, McDonald applied for disability insurance benefits, citing an array of physical and mental impairments, including bipolar disorder, anxiety, depression, schizoaffective disorder, asthma, fibromyalgia, insomnia, and sleep apnea.  (Tr. 79).  McDonald was 27 years old at the time of the alleged onset of disability, had at least a high school education, and had past employment as a certified nursing assistant ("CNA").  (Tr. 50).

With respect to these alleged impairments[2] the record revealed the following: McDonald presented to Penn State Health's Milton Hershey Medical Center's general neurology clinic for new patient consultation in

---

[2] Because McDonald's appeal focuses on the ALJ's treatment of evidence related to her physical impairments, we will forego discussion and analysis of McDonald's mental health records and evaluations.

January of 2022. (Tr. 315). Her chief complaints were an abnormal finding on a brain MRI, chronic migraine with aura, and balance issues with tremors. (*Id.*). She also reported tremors and weakness in her right hand. (*Id.*). In May of 2022, she reported pain, predominantly in her hands and shoulders. (Tr. 408). In December, she explained that if she did not take her hydroxychloroquine and methotrexate, her pain got worse. (Tr. 425). She reported the pain was "all over" but worse in her right shoulder, low back, right leg, and in the hands. (*Id.*). In May of 2023, Dr. Miles McGovney at Penn State Health noted McDonald had postural tremors of the hands. (Tr. 797).

In March of 2021, Dr. Anne Kantner noted McDonald had generalized fatigue and body pain. (Tr. 656). A year later, in March of 2022, Dr. Bettina Aprile at Penn State Health noted McDonald reported generalized fatigue and difficulty moving, and diagnosed fatigue. (Tr. 389-90). Dr. Sowmya Surapaneni also noted "on and off" fatigue in May of 2022. (Tr. 408). In August of 2023, Dr. Surapaneni noted McDonald had chronic fatigue, sleep apnea, and achiness in her hands. (Tr. 922).

It is against this factual backdrop that the ALJ conducted a hearing in McDonald's case on July 3rd, 2024. (Tr. 56). McDonald and a vocational expert ("VE") both testified at this hearing. McDonald testified about her work as a CNA, her mental health challenges including depression and psychosis, how fibromyalgia pain had frusturated her efforts at full-time work, and difficulties with both concentrating and standing for prolonged periods. (Tr. 60-69). The VE in her testimony first classified McDonald's past work, then answered hypothetical questions about an individual with McDonald's background and specific types of limitations. (Tr. 69-72).

Following this hearing, on August 8, 2024, the ALJ issued a decision denying McDonald's application for benefits. (Tr. 42-51). In that decision, the ALJ first concluded that McDonald met the insured status requirement through December 31, 2028. (Tr. 44). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found McDonald suffered from the following severe impairments: fibromyalgia, inflammatory polyarthritis, obesity, a schizoaffective disorder, and anxiety. (Tr. 45). At Step 3 the ALJ determined that McDonald did not

4

have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 46).

Between Steps 3 and 4 the ALJ concluded that McDonald retained the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except she is limited to frequent postural movements except she is limited to occasional ladders, ropes, and scaffolds. She is limited to simple and routine tasks, involving only simple, work-related decisions and only occasional interaction with supervisors and the public.

(Tr. 47).

In reaching this RFC determination, the ALJ made the following findings: the ALJ considered McDonald's reported, subjective symptoms, and found that "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record [.]" (Tr. 48). The ALJ then reviewed the medical record evidence he found supported those findings. (Tr. 48).

The ALJ next considered the medical opinions on record. He was persuaded by the opinion of Dr. Karel Keiter, who opined that McDonald had no environmental limitations. (Tr. 49). The ALJ found this opinion supported by and consistent with McDonald's medical records. (*Id.*). The ALJ found the opinion of Dr. Mary Gavin generally persuasive, except for her finding that McDonald needed environmental limitations due to her asthma and her arthritis. (*Id.*). The ALJ explained that those limitations were not supported by Dr. Gavin's mere references to those conditions and were inconsistent with the opinion of Dr. Keiter. (*Id.*). The ALJ found the rest of Dr. Gavin's opinion to be supported by the record and consistent with Dr. Keiter's findings. (Tr. 49-50).

The ALJ then found at Step 4 that McDonald could not perform her past work but, at Step 5, found that she could perform other jobs that existed in significant numbers in the national economy, such as laundry folder, marker, and wrapper. (Tr. 50-51). Having reached these conclusions, the ALJ determined that McDonald had not met the demanding showing necessary to sustain this claim for benefits and denied this claim. (Tr. 51).

This appeal followed.  (Doc. 1).  On appeal, McDonald challenges the adequacy of the ALJ's decision arguing it is not supported by substantial evidence.  (Doc. 9).

As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be remanded for further consideration by the Commissioner in accordance with this decision.

## III.  Discussion

### A.  Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the

evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

8

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*,

399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence.

Instead, we must determine whether there is substantial evidence to

support the ALJ's findings. In doing so, we must also determine whether

the ALJ's decision meets the burden of articulation necessary to enable

judicial review; that is, the ALJ must articulate the reasons for his

decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d

Cir. 2000). This does not require the ALJ to use "magic" words, but rather

the ALJ must discuss the evidence and explain the reasoning behind his

decision with more than just conclusory statements. *See Diaz v. Comm'r

of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

Ultimately, the ALJ's decision must be accompanied by "a clear and

satisfactory explication of the basis on which it rests." *Cotter v. Harris*,

642 F.2d 700, 704 (3d Cir. 1981).

### B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a

claimant must show that he or she is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work,

11

considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are

12

jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

13

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings*, 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns*, 312 F.3d 113.

### C. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations. *See Diaz*, 577 F.3d at 506.   Our review of those determinations is deferential. *Id.* However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible." *Zirnsak*, 777 F.3d at 612 (citations omitted). An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence." *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted). As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled.").

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. Thus, the ALJ must follow a two-step

process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms in light of the entire administrative record. SSR 16-3p.

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated when considered in light of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p. Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### D.  This Case Will Be Remanded.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir.

17

1999).  McDonald argues, *inter alia*, that the ALJ failed to properly evaluate McDonald's medically determinable impairment of fibromyalgia.  The Commissioner counters that the ALJ properly considered "both subjective and objective evidence" in consideration of fibromyalgia.  After consideration, we conclude that the RFC is not supported by substantial evidence, and so we will remand the case.

McDonald points to SSR 12-2p, which discusses the unique evaluation process required when fibromyalgia is present, and argues that because the ALJ did not cite this ruling, and did not provide specific analysis of fibromyalgia symptoms anywhere within McDonald's RFC, the ALJ failed to properly evaluate this impairment.  (Doc. 8 at 4-6). McDonald further argues that crediting her subjective complaints about fibromyalgia's effects on her would have led to a finding that she was disabled on account of expected absences.  (Doc. 19 at 5).

SSR 12-2p counsels that an ALJ must "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane [.]"  SSR 12-2p, 2012 WL 3104869 at *6.  It also advises that the pain, fatigue, and other symptoms associated with fibromyalgia

may result in exertional limitations, non-exertional physical or mental limitations, and non-exertional environmental restrictions. *Id.*

McDonald asks us to follow the decision of the *Brunson* court, which interpreted SSR 12-2p to mean that "objective medical results should only ever be considered insofar as they 'substantiate' the claimant's subjective statements about the intensity, persistence and limiting effects of his or her symptoms." *Brunson v. Kijakazi*, No. 22-CV-3993, 2023 WL 5916461 at *14 (E.D. Pa. Sep. 11, 2023). Of course, just because there are citations to objective medical results in the ALJ's decision does not *necessarily* mean the ALJ cited those results to discount fibromyalgia, as almost all claimants have multiple medically determinable impairments, but SSR 12-2p requires careful delineation in such circumstances. Here, the ALJ's decision relied on objective medical evidence in discounting McDonald's subjective statements about all her symptoms, stating: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record [.]" (Tr. 48). A brief discussion of this evidence follows, stating that

19

McDonald's "treatment records do not fully support her subjective complaints. Moreover, her work history from April 2023 through at least her hearing date supports she is more functional than alleged." The first sentence references objective evidence, the second, subjective. It is therefore *possible* that there was no error here, if only the subjective evidence was used to discount fibromyalgia symptoms. But we cannot say that is the case, because the ALJ's decision does not suggest which symptoms are being discounted by what evidence.

We are therefore constrained to assume that all symptoms were discounted by the cited evidence, meaning the ALJ relied, at least in part, on objective evidence to discount McDonald's alleged symptoms. As SSE 12-2p implies, the *Brunson* court stated clearly, and other Circuit courts have also held, that is an improper analysis of fibromyalgia symptoms. *See e.g., Arakas v. Comm. Soc. Sec.,* 983 F.3d 83, 98 (4th Cir. 2020) ("ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia"). A reference to 12-2p from the ALJ might have sufficed to explain if fibromyalgia symptoms

were properly discounted. Similarly, if a discussion of fibromyalgia specifically appeared somewhere in the decision, that might have helped us to trace the ALJ's logic in discounting McDonald's symptoms. But the ALJ did neither. Therefore, on this record, we cannot be sure that fibromyalgia was properly evaluated. Further, McDonald is correct that, if her statements about her symptoms were credited, the VE's testimony makes clear that she would be unable to work, and so would qualify as disabled. (*See* Tr. 71). McDonald has therefore demonstrated this error was prejudicial to her.

Accordingly, we find the ALJ's decision is not supported by substantial evidence, and remand is required for further consideration of these issues.[3] While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.

---

[3] Because we find that this issue necessitates remand, we decline to analyze McDonald's other claims of error.

21

IV.    <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner will be

REMANDED for further consideration.

An appropriate order follows.


Submitted this 22nd day of August 2025.



<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge

22